UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IT PORTFOLIO, INC., a Colorado Corporation

               Plaintiff,

-against-                                                                        18 Civ. ___

FACSIMILE COMMUNICATIONS INDUSTRIES,           ECF Case
INC., a Delaware Corporation; and
ATLANTIC TECHNOLOGY INTEGRATORS, LLC,          **COMPLAINT**
a Delaware Limited Liability Company.

               Defendants.

------------------------------------------------------------X

Plaintiff, IT Portfolio, Inc., by and through its attorneys, as its Complaint against Defendants Facsimile Communications Industries, Inc. and Atlantic Technology Integrators, LLC, states and alleges as follows:

## PARTIES

1. Plaintiff IT Portfolio, Inc. ("ITP") is a corporation organized and existing under the laws of the State of Colorado, with its principal place of business at 279 W. Sylvestor Place, Littleton, Colorado 80129.

2. Defendant Atlantic Technology Integrators, LLC ("ATI"), is a Delaware limited liability company, with its principal place of business at 134 West 26th Street, New York, New York 10001.

3. Defendant Facsimile Communications Industries, Inc., ("Facsimile Communications") is a Delaware corporation, with its principal place of business at 134 West 26th Street, New York, New York 10001. Defendant Facsimile Communications Industries does business as "Atlantic Tomorrow's Office".

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff is incorporated under the laws of the State of Colorado. Defendants Facsimile Communications is incorporated under the laws of Delaware, and Defendant ATI is organized under the laws of Delaware. The value to the Plaintiff or the cost to Defendants of the relief requested herein exceeds $75,000.

5. Pursuant to 28 U.S.C. §1391(B) and (C) venue is proper in this district because Defendants maintain their principal place of business within New York City.

**FACTUAL ALLEGATIONS**

6. Prior to 2009, ITP was the owner of certain software known as "Profit," which allows for the remote tracking of copiers and other office devices to monitor for maintenance and to facilitate automatic shipping of supplies.

7. In or about 2009, NER Data Products, Inc ("NER") was the owner of certain print management products designed to optimize data center infrastructure including software known as "Printhelpline."

8. By agreement dated October 1, 2005, ITP and NER contracted to combine ITP's Profit software with NER's Printhelpline software into a new product known as Print4 (the "Print4 Software").

9. By Software Development and Assignment Agreement dated January 1, 2009, (the "Software Agreement"), ITP and NER refined agreements related to the Print4 Software.

10. The Software Agreement obligated ITP to use its best efforts to develop, design and integrate the Print4 Software, expanding and revising the design and providing maintenance and training as necessary.

11. The Software Agreement obligated NER to make monthly payments to ITP including payment of development fees and an additional percentage compensation, subject, however to a minimum of $21,500 per month, increasing by 8% on the first of each year.

12. ITP invoiced NER monthly for the compensation owed upon the Software Agreement.

13. In and after 2013, NER licensed the Print4 Software to Facsimile Communications for its managed print services business.

14. Facsimile Communications sublicensed the Print4 Software to end users to enhance its sales of copier service and toner to the end users.

15. Facsimile Communications paid to NER a monthly license fee to license the Print4 Software, which by October 2015 was approximately Seventy Thousand Dollars ($70,000) per month.

16. From 2013 and thereafter, Facsimile Communications maintained a relationship with ITP including direct communications pertaining to software enhancements to the Print4 Software.

17. In 2013, Facsimile Communications hired a management-level employee who had previously been employed with NER as head of NER's technology department, and in that role became familiar with ITP and its development of the Print4 Software.

18. As a result, from 2013 through 2015, Facsimile Communications had actual knowledge of the commercial relationship between ITP and NER, including the Software Agreement and its requirements.

19. In May 2014, NER defaulted on its obligations to ITP.

20. Section 1.11 of the Software Agreement provided that upon breach by NER, ITP could elect to terminate further development services and that NER would then be responsible to pay to ITP what the Software Agreement termed "Continuing Payments" of the monthly amounts owed

for the next 42 months.

21. NER failed to cure the default, and on December 1, 2014, ITP declared a breach of the Software Agreement and notified NER that ITP was electing to exercise the termination of services and damage remedies in accordance with Section 11.1 of the Software Agreement.

22. NER failed to pay the amounts owed on the Software Agreement prior to the termination of services and failed to pay the Continuing Payments.

23. ITP brought suit against NER in the District Court for the District of Colorado in January 2015.

24. The Software Agreement restricted the sale of the Print4 Software and provided that any purchaser would be liable for the Continuing Payments.

25. On October 31, 2015, while the lawsuit was pending in Colorado, NER sold its managed print services business, including the Print4 Software, to ATI.

26. In the acquisition, ATI was acting as a strawman for Facsimile Communications.

27. Facsimile Communications negotiated the acquisition of the Print4 Software.

28. ATI was created weeks before the sale to be the purchaser.

29. ATI was created and funded by the principals of Facsimile Communications.

30. ATI immediately provided the Print4 Software to Facsimile Communications after the sale.

31. ATI collects no license fees or royalties from Facsimile Communications.

32. ATI has no employees and has no income or assets other than the assets acquired from NER.

33. Facsimile Communications hired the software engineers and Print4 support personnel from NER at the time of the sale and pays their salaries.

34. Facsimile Communications licenses the Print4 Software to its customers and collects

license fees.

35. Facsimile Communications supports the Print4 Software and continues its managed print services business and the managed print services business of NER, using the Print4 Software.

36. Prior to completing the sale, Facsimile Communications received and studied copies of the Colorado lawsuit and the Software Agreement.

37. Facsimile Communications knew of the obligations of a purchaser to ITP in the Software Agreement.

38. Facsimile Communications knew that the obligations of a purchaser in the Software Agreement were designed to compensate ITP for its part in the creation and development of the Print4 Software.

39. Facsimile Communications knew that the Software Agreement requires notice to ITP of any sale of the Print4 Software.

40. Facsimile Communications knew that ITP was the creator of the Print4 Software.

41. Facsimile Communications knew that the Software Agreement required any purchaser of the Print4 Software to compensate ITP for the Software.

42. Facsimile Communications did not review the Software Agreement to determine the obligations which it owed to ITP as purchaser of the Print4 Software.

43. Facsimile Communications reviewed the Software Agreement only to determine whether it could avoid the obligations to ITP after the purchase the Print4 Software from NER.

44. The Software Agreement provided that NER was the owner of the Print4 Software, but also provided ITP with continuing rights in the Print4 Software.

45. Any unauthorized disclosure or transfer of the Print4 Software is prohibited by the Software Agreement.

46. Facsimile Communications and NER kept the sale of the Print4 Software secret from ITP.

47. Facsimile Communications and NER jointly participated in the unauthorized transfer of the Print4 Software.

48. Facsimile Communications refused to pay the 42 months of Continuing Payments to ITP.

49. Facsimile Communications structured the Print4 sale with a strawman to defraud ITP.

50. Facsimile Communications copied and re-branded the Print4 Software structure and code and claimed the copied structure and code was its own creation, free of the rights of ITP.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract – Against ATI and Facsimile Communications)

51. Plaintiff ITP incorporates the allegations in the previous paragraphs as if fully and completely set forth herein.

52. The Software Agreement is a valid and existing contract.

53. NER obtained its rights to the Print4 Software through the Software Agreement.

54. NER had no right to the use of the Print4 Software outside of the Software Agreement.

55. Similarly, the Software Agreement contained obligations of any purchaser of the Print4 Software.

56. The Software Agreement could not be severed from the Print4 Software in the sale of the Software, such a sale being an unauthorized transfer of the Print4 Software.

57. The terms of the Software Agreement obligating, in part, any purchaser of the Print4 Software to make Continuing Payments to ITP, was an offer capable of acceptance by the acquisition of the Print4 Software.

58. Facsimile Communications accepted the obligations within the Software Agreement by acquiring the Print4 Software.

59. Facsimile Communications purchased the Print4 Software from NER, using ATI as a straw

6

man.

60. Facsimile Communications is the real party in interest in the purchase of the Print4 Software.

61. Facsimile Communications is liable to ITP for the obligations of a purchaser in the Software Agreement.

62. The Software Agreement requires that a buyer of the Print4 Software pay to ITP 42 months of Continuing Payments, calculated as 5% of all gross sales of Print4 and derivative products, subject to an annually-increasing minimum monthly payment provision.

63. Facsimile Communications purchased the Print4 Software together with the managed print services customers of NER.

64. Facsimile Communications hired the Print4 software engineers from NER so that it could continue to maintain and improve Print4.

65. Facsimile Communications is continuing the managed print services business of NER.

66. Facsimile Communications and ATI defrauded ITP by structuring its purchase of the Print4 Software to deprive ITP of payment for creating and developing Print4.

67. ATI and Facsimile Communications paid substantially less for the Print4 Software than the product is actually worth.

68. ATI is a successor to the Software Agreement.

69. Facsimile Communications is a successor to the Software Agreement.

70. ITP has made demand on ATI and Facsimile Communications for payment of the unpaid payments required by the Software Agreement, and to begin reporting its monthly gross sales of Print4 and derivative products.

71. ATI and Facsimile Communications have refused to make payments to ITP or to report

Facsimile Communications's gross monthly sales to ITP.

72. ATI and Facsimile Communications have breached their contractual obligations.

73. ATI and Facsimile Communications are liable to ITP for the continuing payments required of a purchaser under the Software Agreement.

WHEREFORE, Plaintiff ITP prays for judgment against ATI and Facsimile Communications, on its First Claim for Relief for Breach of Contract, in an amount to be determined at trial, together with costs, interest, expert fees, attorney fees, and such other and further relief as this Court may deem proper.

## SECOND CLAIM FOR RELIEF
**(Implied Contract – Against Facsimile Communications)**

74. Plaintiff ITP incorporates the allegations in the previous paragraphs as if fully and completely set forth herein.

75. In the Software Agreement, NER and ITP agreed to mutual rights and obligations pertaining to the Print4 Software.

76. Facsimile Communications purchased the Print4 Software with full knowledge of the Software Agreement.

77. The Software Agreement provides that any purchaser of the Print4 Software will be bound by the obligation to make Continuing Payments to ITP.

78. The Software Agreement provides that the Print4 Software cannot be transferred free of the Software Agreement without the approval of ITP.

79. Facsimile Communications joined NER in refusing to provide notice to ITP of the sale of Print4.

80. Facsimile Communications did not obtain the consent or approval of ITP to the sale of Print4.

81. Facsimile Communications impliedly assumed the obligations of a purchaser under the Software Agreement.

82. Facsimile Communications bought the Print4 Software subject to the obligations in the Software Agreement.

83. The reasonable value of the development and ownership of the Print4 Software is not less than the amount of compensation payable to ITP as provided in the Software Agreement.

84. In acquiring the Print4 Software, Facsimile Communications became liable to ITP, its creator, for the cost of creating and developing the Print4 Software.

85. Based upon an implied contract, Facsimile Communications is liable to ITP for the unpaid portion of the Software Agreement or the reasonable value of the benefit derived by Facsimile Communications in obtaining the Print4 Software and developing the Software.

WHEREFORE, Plaintiff ITP prays for judgment against Facsimile Communications, on its Second Claim for Relief for Breach of Implied Contract, in an amount to be determined at trial, together with costs, expert fees, interest, attorney fees, and such other and further relief as this Court may deem proper.

### THIRD CLAIM FOR RELIEF
**(Unjust Enrichment – Against Facsimile Communications)**

86. Plaintiff ITP incorporates the allegations in the previous paragraphs as if fully and completely set forth herein.

87. NER contracted with ITP for the creation and development of the Print4 Software, in exchange for monthly payments to ITP during and after ITP's development services.

88. NER made the required payments under the Software Agreement for five years before defaulting.

89. NER sold the Print4 Software to Facsimile Communications, without compensating ITP for the remaining amounts due.

90. Facsimile Communications purchased the Print4 Software with full knowledge of the terms of the Software Agreement, and with knowledge that as a purchaser of Print4, Facsimile Communications was obligated to make payments to ITP.

91. Facsimile Communications purchased the Print4 Software with knowledge that the Print4 Software could not be sold free of the Software Agreement without the approval of ITP.

92. Facsimile Communications purchased the Print4 Software without notice to or knowledge of ITP.

93. Facsimile Communications received the Print4 Software and retains the benefit of ownership.

94. It would be unjust for Facsimile Communications to retain the benefits of the Print4 Software without paying the amounts owed to ITP for its creation.

95. Facsimile Communications is liable to ITP for the unpaid portion of the amounts required to be paid to ITP by the Software Agreement.

96. Facsimile Communications holds the money withheld from NER and the license fees received under a constructive trust for ITP.

97. The value of the Print4 Software acquired by Facsimile Communications exceeds the amounts due to ITP under the Software Agreement.

WHEREFORE, Plaintiff ITP prays for judgment against Facsimile Communications, upon its Third Claim for Relief for Unjust Enrichment, in an amount to be determined at trial, together with costs, expert fees, interest, attorney fees, and such other and further relief as this Court may deem proper.

**DEMAND FOR A TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: New York, New York
October 18, 2018

LAW OFFICE OF MARISA RAUCHWAY SVERDLOV, LLC

By: /s/ *Marisa Rauchway Sverdlov*
Marisa Rauchway Sverdlov
320 West 37th Street, 12th Floor
New York, NY 10018
Tel: (973) 826-4098
mrauchway@rauchwaylaw.com

Robert C. Podoll *(pro hac vice admission pending)*
Robert A. Kitsmiller *(pro hac vice admission pending)*
Podoll & Podoll, P.C.
5619 DTC Parkway, Suite 1100
Greenwood Village, Colorado 80111
Tel: (303) 861-4000
Rob@podoll.net
Bob@podoll.net

*Attorneys for Plaintiff*